# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Charles Eugene Carpenter, Appellant,

v.

South Carolina Department of Corrections and the State of South Carolina, Respondents.

Appellate Case No. 2017-002577

---

Appeal From Richland County
Robert E. Hood, Circuit Court Judge

---

Opinion No. 5762
Heard June 3, 2020 – Filed August 19, 2020

---

## AFFIRMED IN PART, VACATED IN PART, AND REMANDED

---

Desa Ballard and Harvey M. Watson, III, both of Ballard & Watson, Attorneys at Law, of West Columbia, for Appellant.

Damon Christian Wlodarczyk, of Riley Pope & Laney, LLC, of Columbia, for Respondent South Carolina Department of Corrections.

Attorney General Alan McCrory Wilson and Senior Assistant Deputy Attorney General Megan Harrigan Jameson, both of Columbia, for Respondent the State.

---

**HILL, J.:**  Charles Carpenter alleges he is being unlawfully held in prison because his sentences for conspiracy in trafficking cocaine and conspiracy in trafficking marijuana have expired.  He raised these allegations in two separate civil actions: a petition for writ of habeas corpus and a declaratory judgment action.  After a bench trial, the circuit court ruled Carpenter was procedurally barred from raising his allegations in a petition for a writ of habeas corpus, and even if not barred, his allegations lacked merit.  The circuit court therefore granted declaratory judgment in favor of the South Carolina Department of Corrections (SCDC).  Carpenter appeals these findings and also claims the circuit court erred in failing to rule on his declaratory judgment claims against the State and by failing to disclose a disqualifying bias in favor of the State.  We affirm in part, vacate in part, and remand.

## I.  FACTS

After a state-wide grand jury investigation, Carpenter pled guilty in April 1990 to conspiracy to traffic cocaine and conspiracy to traffic marijuana.  The plea agreement stipulated that if Carpenter cooperated with the State's investigation, the State would ask the trial court to run the sentences for his two convictions concurrently.  In June 1990, the trial court sentenced Carpenter to twenty-five years' imprisonment for the offense of conspiracy of trafficking in cocaine.  At the sentencing hearing, the State alleged Carpenter had not complied with the terms of his plea agreement.  The trial court ruled it was holding the sentence for conspiracy to traffic marijuana in abeyance pending a later sentencing hearing regarding Carpenter's alleged non-cooperation.

When Carpenter's sentencing hearing was reconvened in August 1990, the State presented evidence Carpenter had not cooperated with the State and therefore breached the plea agreement.  The trial court found "beyond absolutely any doubt" the State had lived up to their agreement, but Carpenter had failed to do so.  The trial court sentenced Carpenter to twenty-five years' imprisonment for conspiracy to traffic marijuana and ordered the sentence run consecutively to Carpenter's sentence for conspiracy to traffic cocaine imposed in June 1990.  In February 1992, the trial court issued an order affirming the August 9, 1990 consecutive sentence for conspiracy to traffic marijuana and divesting itself of jurisdiction over the matter.

Carpenter's convictions and sentences were affirmed on direct appeal.  Carpenter then filed several post-conviction relief (PCR) applications, which were denied.  In 1993, Carpenter filed a petition for writ of habeas corpus, which was also denied.  This denial was affirmed on direct appeal.

Upon Carpenter's remand to the custody of SCDC, his SCDC offender summary displayed his "maxout" date as November 23, 2016. A few years later, his summary reflected he was eligible for work release and noted he had earned a total of 700 good-time days and 102 earned work credits. In 1997, Carpenter's sentence was changed in the offender summary to indicate it was not parole eligible. Throughout the 1990s and early 2000s, Carpenter's maxout date fluctuated, but it was never designated as later than 2019. During these fluctuations, his offender summary consistently stated his total sentence was fifty years and his sentences were to be served consecutively. In 2011, Carpenter's projected maxout date changed to April 7, 2040. A note at the bottom of the offender summary stated "Inmate's sentence corrected to show 25 yrs mandatory minimum [day]-for-day sentence per statute . . . ."

Carpenter wrote a letter to SCDC asking why his maxout date had changed to 2040. SCDC notified Carpenter his sentence was modified on June 24, 2011, as a result of an audit because pursuant to the statute he was sentenced under in 1990, Carpenter was required to serve two mandatory minimum sentences for "a total of 50 years that had to be served day-for-day." There is no evidence in the record showing Carpenter ever received a hearing on the issue of the change to his maxout date.

On September 8, 2013, Carpenter filed an SCDC "Inmate Grievance Form Step 1," stating his good time and earned work credits had been removed from his SCDC record, and if they were not restored, he would serve more time in prison than the law required. His grievance was denied. Carpenter then completed an SCDC "Inmate Grievance Form Step 2," arguing SCDC had misinterpreted the law, and as a result, he was being held past his maxout date. The grievance was denied in March 2013. The denial letter informed Carpenter he could appeal this decision to the Administrative Law Court (ALC). There is no evidence in the record that Carpenter pursued an appeal of this grievance denial.

Carpenter later hired a lawyer to investigate the change in his maxout date. The lawyer's correspondence with SCDC revealed that in 2010, an inmate named Carlos Gonzales wrote the South Carolina Supreme Court alleging he was being held past his SCDC maxout date. When the supreme court asked SCDC to respond to Gonzales' letter, SCDC conducted an internal audit of all drug-trafficking offenders who were sentenced to twenty-five years or more before 1996. As a result of the audit, SCDC discovered that in the early 1990s, its record system was not programmed "to capture the 25 years day-for-day," and as a result, some inmates' sentences "were not being reflected correctly." Carpenter was one of those inmates, and his sentences were "updated" to mandatory minimum sentences, causing the

spike in Carpenter's maxout date to 2040. About four other inmates' sentences were "updated" in the same way.

Other inmates whose sentences were audited had already been released, including Carpenter's co-conspirator, Bobby Gene Horne. Although sentenced to twenty-five years under the same statute as Carpenter, Horne received good-time, work, and educational credits. In an email to Carpenter's attorney, SCDC indicated that if Carpenter's sentence had not been entered as "day-for-day" as a result of the audit, he would have received the same type of credits as Horne, and due to Carpenter's consecutive sentence, he would have been released in 2015, fourteen years after Horne.

In this habeas corpus petition and declaratory judgment action, Carpenter alleges: 1) the trial court's jurisdiction to sentence Carpenter ended when the trial court accepted Carpenter's plea and sentenced him in June 1990; therefore, the trial court had no jurisdiction to impose the consecutive twenty-five sentence on Carpenter in August 1990, and that sentence is void; 2) SCDC violated Carpenter's due process rights by denying him notice and a hearing when it changed his sentence to be non-parolable, removed his good-time and work credits, and changed his maxout date to 2040; and 3) SCDC violated Carpenter the right to equal protection under the law when it released Horne in 2001 due to the good-time and work credits he had earned but denied Carpenter's right to the same credits and credit eligibility. Carpenter made these three allegations in both his declaratory judgment cause of action and his petition for a writ of habeas corpus. His prayer for relief included: his immediate release from SCDC custody; a declaration that the trial court's jurisdiction to sentence him evaporated after the trial court sentenced him on the cocaine trafficking conspiracy charge in June 1990; and a declaration that SCDC violated his due process and equal protection rights.

SCDC and the State moved to dismiss Carpenter's actions. In April 2017, retired Chief Justice Jean H. Toal, sitting as a circuit judge, heard the motions to dismiss. Both the State and SCDC argued Carpenter's claims were not appropriate for habeas corpus relief and should have been brought through the Uniform Post-Conviction Relief Procedure Act (PCR Act), S.C. Code Ann. §§ 17-27-10 to -120 (2014 & Supp. 2019), or through SCDC's grievance procedure. Judge Toal denied the State's and SCDC's motions to dismiss, finding the circuit court had jurisdiction over habeas petitions and over declaratory judgment claims. Judge Toal also ruled the PCR Act was not the exclusive method for challenging an unlawful sentence and declaratory relief was available under the circumstances to resolve Carpenter's legal disputes.

In June 2017, Judge Robert E. Hood held a bench trial on Carpenter's habeas corpus and declaratory judgment actions. At the trial, Carpenter contended the trial court did not have jurisdiction to bifurcate Carpenter's sentencing proceeding, and therefore, the proceeding that occurred on August 9, 1990, was not legal and could not result in a valid sentence. Carpenter asserted he had never raised the issue of whether the trial court had jurisdiction to sentence him as to his trafficking in marijuana charge at the August 9, 1990 hearing in any previous PCR action.

Carpenter next argued SCDC changed his sentence without notice, which violated his right to due process. Carpenter asserted the appropriate remedy for the due process violation was for the change in his maxout date to be vacated. Carpenter alleged SCDC violated his due process rights by removing his good-time and work credits, changing his parole eligibility, and increasing his maxout date to 2040 without notice and a hearing and by treating him disparately from other similarly convicted prisoners, specifically Horne. Carpenter further argued he was entitled to immediate release from SCDC custody due to SCDC's multiple violations of his due process rights.

The State responded Carpenter was procedurally barred from raising an issue related to the validity of his sentence in the current habeas petition; instead, such a challenge must be raised through PCR. The State also asserted Carpenter must demonstrate he has exhausted his PCR remedies to be eligible for habeas relief. Finally, the State claimed only the South Carolina Supreme Court has jurisdiction to hear a petition for a writ of habeas corpus if it is found to be procedurally barred in circuit court.

Judge Hood issued two orders, one in favor of SCDC on Carpenter's declaratory judgment claims and the second dismissing Carpenter's petition for habeas corpus against the State. Carpenter filed a Rule 59(e), SCRCP motion to reconsider both orders and asserted Judge Hood failed to rule on his declaratory judgment claims as to the validity of his original sentence. The Rule 59(e), SCRCP motion was denied. Carpenter filed the present appeal. At the same time, he filed his petition for a writ of habeas corpus and a request to certify this appeal with the South Carolina Supreme Court. *See Carpenter v. SCDC*, Case No. 2017-002577; *Carpenter v. SCDC*, Case No. 2017-002582. On June 12, 2018, the supreme court issued an order denying Carpenter's request to entertain his petition for a writ of habeas corpus in the court's original jurisdiction. *Carpenter v. SCDC*, S.C. Sup. Ct. Order dated June 12, 2018. The supreme court also denied Carpenter's request to certify this appeal. *Id*.

## II.    DISCUSSION

This appeal involves appraisal of the framework under which an inmate may challenge the validity of his sentence and SCDC's interpretation and administration of that sentence. We outline this process in the hope that inmates may be able to avoid procedural ping pong of their claims and undertake the most efficient and effective method to receive relief to which they may be eligible.

A. <u>Whether Carpenter Raised PCR Claims</u>

Carpenter alleges he is being held unlawfully in SCDC custody past the expiration of his valid sentence for several reasons. We find Carpenter's claims are PCR claims and should have been raised as such.

South Carolina's PCR Act provides the legal mechanism for:

>     (A)   Any person who has been convicted of, or sentenced for, a crime and who claims:
>
>     (1)   That the conviction or the sentence was in violation of the Constitution of the United States or the Constitution or laws of this State;
>
>     (2)   That the court was without jurisdiction to impose sentence;
>
>     (3)   That the sentence exceeds the maximum authorized by law;
>
>     (4)   That there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;
>
>     (5)   That his sentence has expired, his probation, parole or conditional release unlawfully revoked, or he is otherwise unlawfully held in custody or other restraint; or
>
>     (6)   That the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding or remedy; may institute, without paying a filing

fee, a proceeding under this chapter to secure relief. Provided, however, that this section shall not be construed to permit collateral attack on the ground that the evidence was insufficient to support a conviction.

(B)     This remedy is not a substitute for nor does it affect any remedy incident to the proceedings in the trial court, or of direct review of the sentence or conviction. Except as otherwise provided in this chapter, it comprehends and takes the place of all other common law, statutory or other remedies heretofore available for challenging the validity of the conviction or sentence. It shall be used exclusively in place of them.

S.C. Code Ann. § 17-27-20 (2014).

In *Gibson v. State*, 329 S.C. 37, 40–41, 495 S.E.2d 426, 428 (1998), the South Carolina Supreme Court held:

The availability of habeas corpus has been severely limited by the [PCR Act]. The [PCR] Act "takes the place of all other common law, statutory or other remedies heretofore available for challenging the validity of the conviction or sentence. It shall be used exclusively in place of them." S.C. Code Ann. § 17-27-20([B]) (1976). Thus, this Act supersedes and encompasses the habeas corpus procedure provided by statute.

The *Gibson* court further found, "Habeas corpus is available only when other remedies, such as PCR, are inadequate or unavailable," *id*. at 41, 495 S.E.2d at 428, and "[p]rocedurally, a petitioner seeking habeas corpus must first exhaust all available PCR remedies." *Id*. at 42, 495 S.E.2d at 428. In defining "exhaustion," the court found: "Exhaustion includes filing of an application, the rendering of an order adjudicating the issues, and petitioning for, or knowingly waiving, appellate review. Further, petitioner must allege sufficient facts to show why other remedies, such as PCR, are unavailable or inadequate." *Id*. When a petitioner has filed a petition for a writ of habeas corpus without first exhausting his PCR remedies, the court may construe his petition as an application for PCR. *Id*. at 41, 495 S.E.2d at 428.

In *Al-Shabazz v. State*, 338 S.C. 354, 368, 527 S.E.2d 742, 749 (2000), the South Carolina Supreme Court specifically examined subsection 17-27-20(A)(5) of the PCR Act, the provision for when "the applicant asserts he has fully served a valid sentence and now must be released," noting its inclusion in the PCR Act "reflects the fact that the [PCR Act] replaced the petition for a writ of habeas corpus, which an inmate would have used to make such claims in the past." *Id*. at 368, 527 S.E.2d 742, 749.

The *Al-Shabazz* court also found an application for PCR was not the appropriate method for raising sentencing credits issues. *Id*. at 366–68, 527 S.E.2d at 748–49. Rather, inmates must raise those issues first through SCDC's internal grievance process and then, if the decision involves the removal of earned sentencing credits, through an appeal to the ALC. *Id*; *see also Howard v. S.C. Dep't of Corr*., 399 S.C. 618, 629–30, 733 S.E.2d 211, 217–18 (2012) (holding inmates have a protected liberty interest in earned sentencing credits and are entitled to judicial review of a decision resulting in the removal of those credits). However, the *Al-Shabazz* court found there was an exception to this statutorily-mandated procedure: when the sentencing credit issue is alleged to have caused an inmate to remain imprisoned past the expiration of his lawful sentence, the claim is appropriately raised in a PCR application under § 17-27-20(A)(5). 338 S.C. at 368, 527 S.E.2d at 749.

Carpenter alleges he is being held unlawfully in SCDC custody past the expiration of his valid sentence under two theories. First, he alleges his lawful sentence of twenty-five years' imprisonment for his conviction of conspiracy to traffic cocaine has been served, and his second consecutive sentence of twenty-five years' imprisonment for conspiracy to traffic marijuana was never a valid sentence because the sentencing court lost jurisdiction to sentence him at the conclusion of the June 1990 sentencing hearing. Carpenter contends because he has served his only lawful sentence of twenty-five years' day for day, he is entitled to immediate release from SCDC custody. As this allegation falls squarely under subsections 17-27-20(A)(2) and (5), it is a PCR claim. § 17-27-20(A)(2), (5) ("Any person who has been convicted of, or sentenced for, a crime and who claims . . . [t]hat the court was without jurisdiction to impose sentence; . . . [or t]hat his sentence has expired . . . may institute . . . a proceeding under [the PCR Act] to secure relief.").

Second, Carpenter alleges SCDC misinterpreted both the law and his sentence when it concluded he is not entitled to his earned good-time and work credits and is no longer eligible for parole or for the accrual of sentencing credits of any kind. Carpenter alleges if he had been allowed to retain his earned sentencing credits and eligibility for sentencing credits, he would have been released in 2015, and therefore, he is being held unlawfully in SCDC custody past the expiration of his valid

sentence. As this allegation falls squarely under § 17-27-20(A)(5), it is also a PCR claim. § 17-27-20(A)(5) ("Any person who has been convicted of, or sentenced for, a crime and who claims . . . [t]hat his sentence has expired . . . may institute . . . a proceeding under [the PCR Act] to secure relief."); *see also Al-Shabazz*, 338 S.C. at 368, 527 S.E.2d at 749 (providing when the sentencing credit issue is alleged to have caused an inmate to serve past the expiration of his lawful sentence, the claim is appropriately raised in a PCR application under § 17-27-20(A)(5)).

Having determined both of the theories presented by Carpenter for relief are, in fact, PCR claims, we next consider whether the PCR Act is the exclusive procedural framework for the evaluation of his claims at this time. For the reasons that follow, we conclude it is.

### B. Declaratory Judgment

First, we hold Carpenter may not circumvent the procedures designated in the PCR Act by filing his PCR claims under the Declaratory Judgment Act. Declaratory judgment claims are creatures of statute, and an individual's right to pursue declaratory judgment derives from that statutory authority. *See Thompson v. State*, 415 S.C. 560, 564, 785 S.E.2d 189, 191 (2016) ("Pursuant to South Carolina's Uniform Declaratory Judgments Act (the Declaratory Judgment Act), '[c]ourts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed.'" (quoting S.C. Code Ann. § 15-53-20 (2005))). When the Legislature passed the PCR Act, it included the unambiguous mandate that: "Except as otherwise provided in [the PCR Act], it comprehends and takes the place of all other common law, statutory or other remedies heretofore available for challenging the validity of the conviction or sentence. It shall be used exclusively in place of them." § 17-27-20(B).

We find both of Carpenter's claims fit squarely into a category available for redress under the PCR Act in § 17-27-20(A), and therefore, his claims, which he raised under the Declaratory Judgment Act, must be dismissed as procedurally barred by the PCR Act pursuant to § 17-27-20(B). Accordingly, we vacate Judge Hood's order granting declaratory judgment to SCDC, and we dismiss Carpenter's request for a declaratory judgment as to the validity of his sentence for conspiracy to traffic marijuana.

### C. Writ of Habeas Corpus

Next, we hold Carpenter's petition for a writ of habeas corpus is also procedurally barred by the PCR Act because Carpenter admits he has not raised his current claims for habeas relief in any previous application for PCR. He has not exhausted his PCR

remedies pursuant to *Gibson* and is procedurally barred from raising his claims in a petition for a writ of habeas corpus in the circuit court until he has done so.  However, under *Gibson* it is appropriate to construe Carpenter's current habeas claims as a PCR application, and as such, we vacate Judge Hood's findings regarding the merits of Carpenter's claims for habeas relief and remand Carpenter's case to the circuit court to be treated as a PCR application and for a PCR hearing on the following PCR issues:

> Did the sentencing court retain jurisdiction to sentence Carpenter on the conspiracy to traffic marijuana offense in August 1990?
>
> Did SCDC appropriately interpret South Carolina law to find Carpenter's sentence must be served day for day for fifty years and Carpenter is not entitled to his earned work or good-time credits?  If SCDC did not, has Carpenter accrued enough sentencing credits to be entitled to immediate release?

### D. Successive or Time-Barred

Carpenter's action also raises questions regarding the intersection of the PCR Act's provisions regarding successive and time-barred petitions and its provision allowing claims where inmates have asserted their lawful sentence has expired.  Because Carpenter has filed several PCR applications, on remand, he has the burden to prove a sufficient reason why he did not raise his present claims in his previous applications or they may be subject to being dismissed as successive.  S.C. Code Ann. § 17-27-90; *Aice v. State*, 305 S.C. 448, 450, 409 S.E.2d 392, 394 (1991).  He must also prove his PCR claims are not time-barred under § 17-27-45.  Should the circuit court find Carpenter's claims are successive or time-barred, it may conclude Carpenter has exhausted all available PCR remedies and treat Carpenter's claims as a petition for a writ of habeas corpus.  If treated as a habeas corpus petition, Carpenter will have the burden of proving his current detention is a violation "which . . . constitutes a denial of fundamental fairness shocking to the universal sense of justice" in order to be entitled to release from prison.  *Butler v. State*, 302 S.C. 466, 468, 397 S.E.2d 87, 88 (1990).

### E. Alleged Bias of Judge Hood

Carpenter argues Judge Hood was biased in favor of the State.  We find this issue unpreserved for appellate review because Carpenter never moved for Judge Hood to

recuse himself based on his alleged bias in favor of the State. *See Gaddy v. Douglass*, 359 S.C. 329, 350, 597 S.E.2d 12, 23 (Ct. App. 2004) (providing in order to preserve the issue of whether a circuit court judge should have recused himself from a case, the issue must have been raised to the circuit court); *Davis v. Parkview Apartments*, 409 S.C. 266, 289, 762 S.E.2d 535, 547 (2014) ("Timeliness is essential to any recusal motion. To be timely, a recusal motion must be made at counsel's first opportunity after discovery of the disqualifying facts." (quoting *Duplan Corp. v. Milliken, Inc.*, 400 F. Supp. 497, 510 (D.S.C. 1975))).

F. <u>Res Judicata</u>

We reject the State's argument that the supreme court's denial of Carpenter's petition for original jurisdiction and a writ of habeas action constitutes res judicata or has any other preclusive effect in this case. The denial order was not based on the merits. *See Plum Creek Dev. Co. v. City of Conway*, 334 S.C. 30, 34, 512 S.E.2d 106, 109 (1999) ("To establish res judicata, the defendant must prove the following three elements: (1) identity of the parties; (2) identity of the subject matter; and (3) *adjudication of the issue in the former suit*." (emphasis added)). As the court noted in *Simpson v. State*, it has the authority to entertain habeas corpus petitions in its original jurisdiction. 329 S.C. 43, 46 n.4, 495 S.E.2d 429, 431 n.4 (1998) ("Under art. 5, § 5 of the South Carolina Constitution, this [c]ourt retains the ability to entertain writs of habeas corpus in our original jurisdiction and grant relief in those unusual instances where 'there has been a violation which, in the setting, constitutes a denial of fundamental fairness shocking to the universal sense of justice.' [*Butler*, 302 S.C. at 468, 397 S.E.2d at 88]; *see also Simmons v. State*, 322 S.C. 49, 471 S.E.2d 455 (1993); *Key v. Currie*, [305 S.C. 115, 116, 406 S.E.2d 356, 357 (1991)] (this Court will exercise its original jurisdiction where there is an extraordinary reason such as a question of significant public interest or an emergency)."). This does not mean, though, that the supreme court's habeas corpus jurisdiction is exclusive. *See Gibson*, 329 S.C. at 42, 495 S.E.2d at 429 (finding that upon remand if petitioners can show "PCR is unavailable, all other remedies have been exhausted, and the issues raised now could not have been raised in their prior PCR applications, the *lower court may treat the applications as habeas petitions and provide a hearing on their constitutional claim*." (emphasis added)). Nor does it mean an order of that court declining to exercise its original jurisdiction operates as a ruling on the merits for purposes of res judicata.

## III.   CONCLUSION

Carpenter's claims are cognizable under subsections 17-27-20(A)(2) and (5) of the

PCR Act and have not been raised in any previous PCR application. Accordingly, Carpenter is procedurally barred from raising them under the Declaratory Judgment Act or in a petition for a writ of habeas corpus. Therefore, we affirm Judge Hood's order dismissing Carpenter's habeas petition to the extent it finds the habeas petition was procedurally barred, and we vacate Judge Hood's orders: (1) granting declaratory judgment in favor of SCDC and (2) evaluating the merits of Carpenter's habeas corpus claim. We construe Carpenter's habeas corpus petition as an application for PCR and remand to the circuit court for an evaluation of his claims in accordance with this opinion.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

**WILLIAMS and KONDUROS, JJ., concur.**